IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES PROTIN, | ) |
| Plaintiff, | ) |
| | ) 2:23-cv-01981 |
| v. | ) |
| GREENMAN-PEDERSON, INC., | ) |
| Defendant. | ) |

**OPINION**

**Mark R. Hornak, Chief United States District Judge**

Plaintiff James Protin brings this suit under the Age Discrimination in Employment Act (ADEA). Mr. Protin alleges that Defendant Greenman-Pedersen, Inc. (GPI)—his former employer—violated the ADEA's antidiscrimination provision by firing him because of his age. Mr. Protin also alleges that GPI violated the ADEA's antiretaliation provision by asserting counterclaims against him. GPI now moves to dismiss Mr. Protin's retaliation claims.

For the reasons discussed below, GPI's Partial Motion to Dismiss is DENIED.

**I.    Background**

GPI is a national, multipurpose engineering firm with over 1,600 employees. (ECF No. 30 ¶¶ 15-16; ECF No. 33 ¶¶ 15-16). Sometime in April 2020, GPI hired Mr. Protin to work as a Director of Business Development in its Pittsburgh office. (ECF No. 30 ¶¶ 19-20; ECF No. 33 ¶¶ 19-20). According to Mr. Protin, his time at GPI was without incident: he received several bonuses and a promotion; his performance was "exemplary"; and he was never subject to employee discipline or negative reviews. (ECF No. 30 ¶¶ 23, 36-37). Then, in August 2023, Mr. Protin was

1

fired. (ECF No. 30 ¶ 28; ECF No. 33 ¶ 28). At the time of his termination, he was sixty-three (63) years old. (ECF No. 30 ¶ 32).

In November 2023, Mr. Protin initiated the present lawsuit. According to Mr. Protin, GPI's conduct violated the ADEA. GPI retained younger, less qualified employees, and his termination was motivated by age-based animus. (ECF No. 1 ¶¶ 28, 32). In its Answer, GPI denied that it fired Mr. Protin because of his age and also brought a counterclaim against Mr. Protin. (ECF No. 20). It claimed that Mr. Protin breached the fiduciary duty of loyalty that he owed to GPI by: (1) maintaining outside employment; (2) misusing a corporate credit card; and (3) misappropriating corporate resources, including his time. (ECF No. 20 at 9-11). GPI asserted this claim as a compulsory counterclaim under Rule 13(a)(1) of the Federal Rules of Civil Procedure. (ECF No. 20 at 8).

In response, Mr. Protin amended his Complaint to add a retaliation claim. In his Amended Complaint, Mr. Protin alleges that GPI's counterclaim is baseless, and that GPI only brought this counterclaim to punish Mr. Protin for filing a charge of discrimination with the EEOC and for filing suit in this Court. (ECF No. 30 ¶¶ 43-101). GPI then moved to dismiss Mr. Protin's retaliation claim. (ECF No. 31). That Motion is now before the Court.

**II.     Legal Standard**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In evaluating such a motion, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, the Court need not accept as true

any unsupported conclusions or inferences nor "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As such, a plaintiff's factual allegations must "raise a right to relief above the speculative level" and state a "plausible" claim for relief to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**III.    Discussion**

GPI advances two principal arguments in support of its Motion to Dismiss. First, GPI argues that post-termination conduct may never be the basis for a retaliation claim under the ADEA. (ECF No. 32 at 3-4). And second, GPI argues that even if post-termination conduct could be the basis for an ADEA retaliation claim, Mr. Protin's retaliation claim should still be dismissed because he has failed to sufficiently allege that GPI's counterclaim was "objectively baseless." (ECF No. 32 at 4-6).

**A.    Whether Post-Termination Conduct May Be the Basis for Retaliation Claim Under the ADEA**

The ADEA's antiretaliation provision prohibits an employer from discriminating "against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section." 29 U.S.C. § 623(d). To establish a prima facie case for retaliation, the plaintiff must demonstrate "(1) [that she engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (alteration in original) (quoting *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)); *accord Kowal v. Ferndale Area Sch. Dist.*, No. 21-3386, 2023 WL 110541, at *2 (3d Cir. Jan. 5, 2023), *cert. denied*, 144 S. Ct. 280 (2023);

3

*Kochka v. Allegheny Health Network*, No. 21-01349, 2023 WL 2216286, at *5 (W.D. Pa. Feb. 24, 2023).[1]

GPI first argues that Mr. Protin retaliation claim fails as a matter of law because post-termination conduct may never form the basis for an ADEA retaliation claim. (ECF No. 32 at 3). In support of its position, GPI relies primarily on the Third Circuit's decision in *Glanzman v. Metropolitan Management Corp.*, 391 F.3d 506 (3d Cir. 2004). In *Glanzman*, the plaintiff claimed that her former employer retaliated against her by opposing her claim for unemployment compensation. 391 F.3d at 515. Relying on a Title-VII retaliation case, the court wrote that "To establish a claim for retaliation, a plaintiff must show that: (1) she was engaged in protected activities; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." *Id.* at 515-16 (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000)). Based on this articulation of the test, the court concluded that the plaintiff's retaliation claim failed for two reasons. First, the employer's contest of the plaintiff's unemployment-benefits claim occurred after the plaintiff's employment was terminated. "Once her employment was terminated it was not possible for her to suffer an adverse employment action." *Id.* at 516. And second, the court noted that the plaintiff suffered no harm from the allegedly retaliatory conduct. *Id.*

In response, Mr. Protin argues that *Glanzman* is no longer good law, that it has been undermined by the Third Circuit's decision in *Fasold v. Justice*, 409 F.3d 178 (3d Cir. 2005), and

---

[1] On occasion, the Third Circuit has articulated the second element slightly differently, stating it as requiring an "adverse employment action," not just an "adverse action." *See, e.g.*, *Russo v. Bryn Mawr Tr. Co.*, No. 22-3235, 2024 WL 3738643, at *5 (3d Cir. Aug. 9, 2024). For the reasons discussed at length below, the Court believes that the more general articulation of the test is the correct one.

4

by the Supreme Court's decision in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006). (ECF No. 36 at 3-5). Mr. Protin also notes that a number of district courts in the Third Circuit have applied *Burlington Northern* to retaliation claims under the ADEA. (ECF No. 36 at 5-7).

In reply, GPI distinguishes *Fasold* on the facts and argues that *Burlington Northern*, which was a Title-VII case, has not always been applied—and should not be applied—to ADEA retaliation claims. (ECF No. 37 at 2-4).

For somewhat different reasons than those advanced by Mr. Protin, the Court concludes that post-termination conduct may form the basis for a retaliation claim under the ADEA. While *Glanzman*'s holding, if good law, would lead to a contrary result, for the reasons discussed below, the Court concludes that *Glanzman* does not now provide the rule of decision on this point. Here's why.

"As a general rule, there are—appropriately and of necessity—very significant constraints on this Court's authority to call into question the continued force of a precedential holding of the Third Circuit." *United States v. Green*, 610 F. Supp. 3d 711, 731 (W.D. Pa. 2022). In virtually every circumstance, this Court is bound to apply the holdings of published and precedential Third Circuit decisions unless those holdings have been specifically and expressly abrogated or overturned by the Supreme Court or the Third Circuit sitting *en banc*. *Id.* (citing *Pardini v. Allegheny Intermediate Unit*, 524 F.3d 419, 426 (3d Cir. 2008)). Importantly, when two precedential decisions by Third Circuit panels conflict, this Court must follow the earlier decision. *Id.* at 732 (citing *Pardini*, 524 F.3d at 426).

Beyond those principles, in certain limited circumstances, this Court may also decline to follow a precedential panel decision that appears to be on point even in the absence of express *en*

5

*banc* repudiation. Such circumstances are present where the prior Third Circuit decision "'conflicts with intervening Supreme Court precedent,' at least where that intervening precedent 'unquestionably presents an intervening shift in the applicable . . . analytical framework.'" *Id.* at 731 (quoting *Karns v. Shanahan*, 879 F.3d 504, 515 (3d Cir. 2018)). In such circumstances, when intervening decisions "fundamentally undermine[]" a case's "precedential and persuasive vitality," that case no longer retains controlling force. *Id.* at 732-33.

Here, applying the above principles, the Court concludes that *Glanzman*'s holding—that post-termination conduct may never form the basis for a retaliation claim—does not retain "controlling force" for two reasons. First, it is inconsistent with precedential Third Circuit and Supreme Court decisions that predate *Glanzman*. And second, it has since been fundamentally undermined by the Supreme Court's decision in *Burlington Northern* to the degree that it can no longer be considered controlling precedent.

Prior to *Glanzman*, the Third Circuit held that Title VII's antiretaliation provision protects former employees, at least in certain contexts. In *Charlton v. Paramus Board of Education*, 25 F.3d 194, 200 (3d Cir. 1994), the Third Circuit held that an "ex-employee may file a retaliation action against a previous employer for retaliatory conduct *occurring after the end of the employment relationship* when the retaliatory act is in reprisal for a protected act within the meaning of [Title VII] and arises out of or is related to the employment relationship." (emphasis added). The court reasoned that an interpretation that excluded former employees and post-termination conduct would "permit employers to retaliate with impunity" and would "chill Title VII claims for discriminatory discharges." *Id*.

Then, in *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997), the Supreme Court came to the same conclusion. Justice Thomas, writing for a unanimous Court, concluded that former

6

employees—and post-termination conduct—were covered by Title VII's antiretaliation provisions. *Id.* at 346. Excluding former employees from the protection of the antiretaliation provision would be "destructive" to the purposes of the antiretaliation provision would enable employers to "retaliate with impunity against an entire class of acts under Title VII—for example, complaints regarding discriminatory termination." *Id.*

*Charlton* and *Robinson v. Shell* were Title-VII retaliation cases, but the Court does not understand their holdings as limited to that context. Courts in this Circuit are directed to and routinely do draw on Title-VII cases when interpreting and applying the ADEA and vice versa. *See, e.g.*, *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 698 (3d Cir. 1995) ("[C]ourts routinely look to law developed under Title VII to guide an inquiry under the ADEA."); *Satterfield v. Consol Pa. Coal Co.*, No. 06-1262, 2007 WL 2728541, (W.D. Pa. Sept. 17, 2007) (noting that the antiretaliation provisions of Title VII and the ADEA are not "materially different"); *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006) (noting that the "same standards and burdens apply to" retaliation claims under Title VII and the ADEA). *Glanzman* itself did this: the lone citation in *Glanzman*'s retaliation section was to a Title-VII case. *See* 391 F.3d at 515-16 (citing *Farrell*, 206 F.3d at 279).

There's good reason to interpret and apply the antiretaliation provisions in Title VII and the ADEA similarly. The statutes have the same remedial purpose. *See McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 358 (1995) ("The ADEA and Title VII share common substantive features and also a common purpose: 'the elimination of discrimination in the workplace.'" (quoting *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756 (1979))). And the statutory text of the antiretaliation provisions is nearly identical. *Compare* 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . .

7

because he has opposed any practice made an unlawful employment practice by this subchapter."), *with* 29 U.S.C. § 623(d) ("It shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section.").

In light of these observations, the Court concludes that to the extent *Glanzman* held that post-termination conduct may *never* form the basis for a retaliation claim, it was at the time of its decision outside of then-existing Third Circuit precedent and does not control the analysis or decision here.

But even to the extent that *Glanzman* should be considered to have stated the controlling rule on this point when it was decided, that holding has been "fundamentally undermine[d]" by the Supreme Court's decision in *Burlington Northern* and subsequent Third Circuit decisions. *Green*, 610 F. Supp. 3d at 732. *Glanzman* relied on a narrow—and since repudiated— understanding of what constitutes retaliation. Under Third-Circuit law at the time *Glanzman* was decided, retaliatory conduct was proscribed only if it "alter[ed] the employee's 'compensation, terms, conditions, or privileges of employment,' deprive[d] him or her of 'employment opportunities,' or 'adversely affect[ed] his [or her] status as an employee.'" *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997) (quoting 42 U.S.C. §2000e-2), *abrogated by Burlington Northern*, 548 U.S. at 67. This requirement "that retaliatory conduct must be serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment" was operationalized into "the doctrinal requirement that the alleged retaliation constitute 'adverse employment action.'" *Id.* (citing *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 273 (7th Cir. 1996)).

With this narrow definition of "adverse employment action," *Glanzman*'s holding regarding post-termination conduct seems self-evident. "Once [the plaintiff's] employment was terminated it was not possible for her to suffer an adverse employment action." *Glanzman*, 391 F.3d at 516. If conduct is an "adverse employment action" only if it alters the "employee's compensation, terms, conditions, or privileges of employment," then of course post-termination conduct can't fit the bill. Once an employee has been fired, nothing can alter the terms or conditions of employment because there is no employment.

But since *Glanzman*, the Supreme Court has explicitly rejected this narrow understanding of retaliatory conduct. In *Burlington Northern*, the Court held that Title VII's antiretaliation provision is "not limited to discriminatory actions that affect the terms and conditions of employment." 548 U.S. at 64. Rather, the Court held, the provision "extends beyond workplace-related or employment-related retaliatory acts and harm" to all conduct that a reasonable employee would find "materially adverse," *id.* at 67-68; that is, to all conduct that "could well dissuade a reasonable worker from making or supporting a charge of discrimination," *id.* at 57. In so holding, the Court explicitly held contrary to then-extant Third Circuit law on this point. *Id.* at 67.

Though *Burlington Northern* involved Title-VII claims, its holding is not so limited. Since *Burlington Northern*, the Third Circuit has applied the decision's "materially adverse" standard to ADEA retaliation claims. *See Daniels*, 776 F.3d at 195-96; *Swain v. City of Vineland*, 457 Fed. App'x 107, 111 (3d Cir. 2012).[2] While these cases do not involve post-termination conduct, the

---

[2] GPI says that the court did not apply *Burlington Northern* in *Swain v. City of Vineland*, 457 Fed. App'x 107 (3d Cir. 2012). (ECF No. 37 at 3). GPI is incorrect. In *Swain*, the Third Circuit plainly applies *Burlington Northern* to the ADEA retaliation claim. 457 Fed. App'x at 111 ("A broader definition of adverse action, 'extend[ing] beyond workplace-related or employment-related retaliatory acts and harm,' applies to retaliation claims than to discrimination claims." (quoting *Burlington Northern*, 548 U.S. at 67)).

district courts in the Third Circuit that have addressed this question have concluded that *Burlington Northern* applies to—and authorizes—ADEA discrimination claims based on post-termination conduct. *Petrunich v. Sun Bldg. Sys., Inc.*, No. 04-2234, 2006 WL 2788208, at *7-8 (M.D. Pa. Sept. 26, 2006) (concluding that post-termination opposition to unemployment benefits claim may constitute an adverse action under the ADEA); *Roe v. McKee Mgmt. Assocs., Inc.*, No. 16-5520, 2017 WL 690538, at *8 (E.D. Pa. Feb. 21, 2017) (same); *see also Romero v. Allstate Ins. Co.*, No. 01-3894, 2016 WL 3654265, at *11-13 (E.D. Pa. July 6, 2016) (concluding that post-termination counterclaims may form the basis for an ADEA retaliation claim if "objectively baseless").[3]

Applying *Burlington Northern*'s more capacious understanding of retaliatory conduct, it appears plain that post-termination conduct is not definitionally barred from forming the basis for a retaliation claim. Just as it was seemingly self-evident that an employer could not alter an employee's "compensation, terms, conditions, or privileges of employment" after that employee has been fired, it is equally self-evident that an employer's post-termination conduct "could well dissuade a reasonable worker from making or supporting a charge of discrimination," *Burlington Northern*, 548 U.S. at 57.

---

[3] In its reply, GPI points to a few cases in which Third-Circuit courts did not apply *Burlington Northern* to ADEA retaliation claims. (ECF No. 37 at 3). None of these cases change the Court's conclusion. First, in *Fiorentini v. William Penn School District*, 665 Fed. App'x 229 (3d Cir. 2016), there was no ADEA retaliation claim; GPI cites the portion of the decision addressing an ADEA discrimination claim, not a retaliation claim. (ECF No. 37 at 3). Second, in *Swain*, the Third Circuit *did* apply *Burlington Northern*. 457 Fed. App'x at 111. Third, *Zygmunt v. Del Toro*, No. 22-0538, 2023 U.S. Dist. LEXIS 162796 (M.D. Pa. Sept. 13, 2023), involved a pro se plaintiff. Moreover, the magistrate judge in that case evaluated the adverse action requirement for substantive discrimination and retaliation as if they were the same. *Id.* at *6. As the Supreme Court recently explained in *Muldrow v. City of St. Louis*, 601 U.S. 346, 357-58 (2024), the "adverse action" requirements for discrimination and retaliation claims are not identical. The two provisions have different purposes that necessitate different considerations. *Id.*

Accordingly, the Court concludes that post-termination conduct may, under certain circumstances, provide the basis for a retaliation claim under the ADEA.

### B.    Whether Mr. Protin Has Sufficiently Pleaded His Retaliation Claim

Having concluded that the ADEA does not categorically proscribe retaliation claims based on post-termination conduct, the question then becomes whether Mr. Protin has adequately pleaded that he has been subjected to an "adverse action." Here, the "adverse action" in question is GPI's filing of a counterclaim in this case against Mr. Protin.

#### 1.    Whether Counterclaims May Be the Basis for a Retaliation Claim

The Third Circuit has not specifically addressed whether a counterclaim may constitute an "adverse action" for the purposes of antiretaliation law, and district courts have split over the question. *See Berrada v. Cohen*, No. 16-574, 2017 WL 1496930, at *6 (D.N.J. Apr. 24, 2017) (compiling cases).

This Court concludes that they may. In *Burlington Northern*, the Supreme Court defined retaliation broadly as conduct that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." 548 U.S. at 57. Further, the Court recognized that retaliatory conduct could extend "beyond workplace-related or employment-related retaliatory acts and harm." *Id.* at 67. Applying the *Burlington Northern* standard, it seems clear to this Court that a counterclaim can fit the bill: having to defend a counterclaim might well deter an employee from prosecuting their charges of discrimination. *See Brown v. TD Bank, N.A.*, No. CV 15-5474, 2016 WL 1298973, at *7 (E.D. Pa. Apr. 4, 2016) ("Litigation is expensive, time-consuming, and emotionally draining. . . . A reasonable worker, faced with the prospect or reality of a civil action, might well decide to abandon his charges of discrimination rather than move forward."); *Romero*, 2016 WL 3654265, at *13 (concluding that counterclaims may sometimes be adverse action under

11

ADEA and ERISA); *Parry v. New Dominion Const., Inc.*, No. 14-1115, 2015 WL 540155, at *6-8 (W.D. Pa. Feb. 10, 2015) (granting leave to amend complaint to include retaliation claims based on counterclaim); *Nesselrotte v. Allegheny Energy, Inc.*, No. CIV.A. 06-01390, 2007 WL 3147038, *11-12 (W.D. Pa. Oct. 25, 2007) (same). Therefore, a counterclaim may be a "materially adverse" action and form the basis for a retaliation claim under the ADEA. *See Muldrow v. City of St. Louis*, 601 U.S. 346, 357-58 (2024).

This said, preventing retaliation and discrimination is not the only important interest at play in this equation. The First Amendment protects every person's right to petition the government, including through litigation filed in federal court, which would include an employer asserting a counterclaim against an employee or former employee who first instituted a workplace or other lawsuit. *We, Inc. v. City of Philadelphia*, 174 F.3d 322, 326-27 (3d Cir. 1999). But First Amendment interests are not implicated when the litigation is "objectively baseless." *Brown*, 2016 WL 1298973, at *7; *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 743 (1983) ("[B]aseless litigation is not immunized by the First Amendment right to petition.").

Accordingly, a counterclaim in such circumstances may be basis for an ADEA retaliation claim, but only if the counterclaim is (1) "objectively baseless" and (2) made with a retaliatory motive.[4] *See Nesselrotte*, 2007 WL 3147038, at *12 ("[T]he only circumstance in which the filing of a compulsory counterclaim might constitute retaliation is where the counterclaim is totally baseless." (quoting *Beltran v. Brentwood North Healthcare Ctr., LLC*, 426 F. Supp. 2d 827, 834

---

[4] Though they offer slightly different articulations of the test, the parties seem to agree that—to the extent that a counterclaim may be the basis for a retaliation claim all—it must be "objectively baseless" to be the basis for a retaliation claim. (*See* ECF No. 32 at 4-5; ECF No. 36 at 9). While Mr. Protin's offers the following formulation—"without any reasonable good-faith basis"—the Court does not see this as meaningfully different from a standard of objective baselessness. (ECF No. 36 at 9).

(N.D. Ill. 2006))); *Romero*, 2016 WL 3654265, at *13 ("[W]e must now determine whether the agents plead facts from which can reasonably infer Allstate's counterclaims are objectively baseless, made in bad faith brought with a retaliatory motive.").

2. Whether Mr. Protin Has Adequately Pleaded that GPI's Counterclaim Is Baseless

Because GPI does not appear to argue that Mr. Protin has failed to plead retaliatory motive, (*see* ECF No. 32 at 4; ECF No. 36 at 9; ECF No. 37 at 4), the question thus becomes whether Mr. Protin has adequately pleaded that GPI's counterclaim was objectively baseless. "To plead that a counterclaim is baseless, a plaintiff must do more than merely contest the factual allegations underlying the counterclaim or the merits of the counterclaim." *Smart v. Phoenix Lithographing Corp.*, No. CV 21-486, 2022 WL 3229321, at *5 (E.D. Pa. Aug. 10, 2022) (citing *Berrada*, 2017 WL 1496930, at *6). Rather, the plaintiff must plead sufficient facts to permit the court to draw a reasonable inference that the allegedly retaliatory counterclaim was without reasonable basis in fact or law. *See Romero*, 2016 WL 3654265, at *13.

The Court concludes that Mr. Protin has done enough here, at least at this stage of the proceedings. In its counterclaim, GPI alleges that Mr. Protin breached his duty of loyalty by conducting business for the Protin Group while employed at GPI in violation of GPI policy, by misusing GPI credit cards, and by misappropriating his time. (ECF No. 20 at 9-11). In his Amended Complaint, Mr. Protin includes factual allegations that at least on their face would call into question whether GPI had a factual basis for its claims.

Regarding GPI's claim that concerns Protin's outside employment, Protin pleads the following:

- GPI's employment policy permits outside employment with notification of one's branch manager, (ECF No. 30 ¶¶ 60, 63); Protin's branch manager was aware of Protin's outside

13

employment, did not believe that this conflicted with his work at GPI, and did not ask him to terminate this outside employment. (ECF No. 30 ¶¶ 66, 69).
- GPI's CEO was aware of Protin's outside work and did not ask him to stop. (ECF No. 30 ¶¶ 70-71).
- GPI did not conduct any investigation before filing the claim regarding Protin's outside employment. (ECF No. 30 ¶¶ 64-65).

Regarding GPI's claim that Protin misused the company credit card, Protin pleads the following:

- GPI didn't conduct any investigation into these allegations before bringing the counterclaim. (ECF No. 30 ¶ 76).
- Protin's supervisor reviewed and approved of Protin's credit card usage. When asked to refund GPI, Protin did so. (ECF No. 30 ¶ 78).
- GPI was aware of Protin's credit card usage and approved of it. (ECF No. 30 ¶ 84).

And regarding GPI's claim that Protin misappropriated company time, Protin pleads the following:

- GPI didn't conduct any investigation into these allegations. (ECF No. 30 ¶ 87).
- GPI didn't identify what company resources were misused. (ECF No. 30 ¶ 89).
- GPI's regional manager couldn't articulate facts supporting conclusion that Protin misused GPI time, nor was he able to articulate efforts to investigate misuse of company time. (ECF No. 30 ¶¶ 90-91).

These allegations go beyond simply contesting the merits of the counterclaim. Rather, these alleged facts—particularly those related to GPI's apparent failure to investigate—taken as true as the Court must at this preliminary stage, permit the Court to draw a plausible inference that GPI lacked a factual basis for its counterclaim, and therefore, that the counterclaim is objectively baseless.[5] And for these purposes, that is the issue before the Court today. Assessing the ultimate merits of the positions of the parties on the viability of the counterclaim will await another day.

---

[5] The Court notes that even with this, this is a close case. The quantity and quality of the factual allegations in Mr. Protin's Amended Complaint fall somewhere in the middle of the cases cited by the parties, more specific than some, less specific than others. *Cf. Smart*, 2022 WL 3229321 (granting motion to dismiss); *Romero*, 2016 WL 3654265 (denying motion to dismiss). The Court's conclusion at this stage is driven largely by the generous standards it must apply at the

14

## IV. Conclusion

Therefore, GPI's Partial Motion to Dismiss is DENIED. An appropriate Order shall issue.

s/ Mark R. Hornak  
Mark R. Hornak  
Chief United States District Judge

Dated: October 11, 2024

---

motion-to-dismiss stage and not by an assessment of one counterclaim's ultimate merit. After discovery, this issue may end up being at the center of a summary judgment motion.

GPI also argues that the compulsory nature of the counterclaim weighs against finding that the claim is baseless. (ECF No. 37 at 5). It is not clear to the Court why a compulsory counterclaim is less likely to be baseless. Rather, the compulsory nature of the counterclaim seems more properly considered when evaluating the counterclaimant's motive in bringing the claim. That is, a party bringing a compulsory counterclaim is less likely to have a retaliatory motive because there is another natural explanation for their assertion of the counterclaim: i.e., they must bring the claim now or lose it. This said, because GPI does not argue that Mr. Protin failed to sufficiently allege retaliatory motive, the Court declines to make this argument for it.

15